IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

J.B. HUNT TRANSPORT, INC.                                           PLAINTIFF

V.                      CASE NO. 5:16-CV-05323

AMERICAN INTERNATIONAL GROUP, INC.;
AIG SPECIALTY INSURANCE GROUP
f/k/a American International Specialty
Lines Insurance Company; AMERICAN HOME
ASSURANCE COMPANY; and LIAM MURPHY                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are a Motion to Remand (Doc. 9) and Brief in Support (Doc. 10) filed by Plaintiff J.B. Hunt Transport, Inc.'s ("J.B. Hunt"); a Response in Opposition (Doc. 12) filed by Defendants American International Group, Inc., AIG Specialty Insurance Company f/k/a American International Specialty Lines Insurance Company, and American Home Assurance Company (collectively "the AIG Defendants"); and a Reply (Doc. 13) filed by J.B. Hunt. The AIG Defendants removed this case from the Circuit Court of Benton County, Arkansas, on November 9, 2016 (Doc. 1), asserting that J.B. Hunt fraudulently joined Defendant Liam Murphy to the action in order to defeat diversity jurisdiction and prevent the case from being filed in federal court. J.B. Hunt, an Arkansas citizen, argues in its Motion to Remand that Mr. Murphy, also an Arkansas citizen, was not fraudulently joined, and the case should be remanded back to state court. For the reasons explained herein, the Court **GRANTS** the Motion to Remand.

### I. BACKGROUND

This is a case concerning whether insurance proceeds are available to pay a judgment that was entered against J.B. Hunt in state court in Indiana. That judgment

proceeded from a separate lawsuit for damages arising from a motor vehicle accident on January 17, 2006, where a tractor-trailer driven by J.B. Hunt employee Terry Brown skidded off the road in snowy conditions and came to rest in the median of the highway. Mr. Brown was injured and taken from the scene in an ambulance, while the truck remained in the median. At some point, the vehicle in which Kristen Zak was a passenger came down the same highway, skidded off the highway at approximately the same spot, and collided into the J.B. Hunt truck that was stranded in the median. Ms. Zak suffered permanent brain injuries as a result of the accident, and her guardian brought suit against Mr. Brown, J.B. Hunt, and others, in the Superior Court of Lake County, Indiana. On May 20, 2015, the jury returned a verdict in favor of Ms. Zak's guardian in the amount of $32.5 million, with 30% of the fault assessed to Mr. Brown, 30% to J.B. Hunt, and 40% to others. The court held that J.B. Hunt was responsible for Mr. Brown's negligence, which meant that J.B. Hunt was deemed liable to Ms. Zak's guardian for 60% of the verdict, or $19.5 million, plus post-judgment interest. According to the Complaint in the case at bar, on August 18, 2016, the Indiana Court of Appeals affirmed the trial court's entry of judgment on the verdict.

Up until June 30, 2015, J.B. Hunt believed that its liability for the judgment would be completely covered by several policies of insurance. J.B. Hunt's first policy was with American International Group, Inc. ("AIG") for $1.5 million, with a reserve of $500,000 to be paid by J.B. Hunt. AIG agreed to pay the limit of this policy toward the Zak judgment. The second policy was for $8 million with Catlin-Bermuda Insurance. Catlin-Bermuda also agreed to pay policy limits toward the Zak judgment. The third policy was with American International Specialty Lines Insurance Company ("AISLIC"), an alleged subsidiary or

2

affiliate of AIG. According to the Complaint, AIG issued a reservation-of-rights letter to J.B. Hunt as to the AISLIC policy on June 30, 2015. According to the letter, coverage for the Zak judgment was denied based on AIG's contention that it had not received proper notice of the Zak claim, as per the requirements of the AISLIC policy. J.B. Hunt maintains the earliest that it knew that coverage under the AISLIC policy would be denied was in June of 2015, with the receipt of this letter.

J.B. Hunt now advances several alternative arguments against Defendants, all in an effort to obtain a judicial declaration that the $9.5 million AISLIC policy should be paid to J.B. Hunt to satisfy the Zak judgment. First, J.B. Hunt argues that AIG received actual notice of the Zak claim, since it paid policy limits on its $1.5 million policy to J.B. Hunt. Since AIG knew of the Zak claim, J.B. Hunt contends that AIG owed a duty to forward notice of the claim to AIG's affiliate, AISLIC. Alternately, J.B. Hunt argues that AISLIC was under constructive notice of the Zak claim due to its close affiliation with AIG. Yet a third, alternative argument J.B. Hunt suggests is that, if notice was not properly provided to AISLIC, the person to blame for this omission is Defendant Liam Murphy of Rebsamen Insurance, who allegedly breached a professional duty of care to J.B. Hunt by either failing to put AISLIC on actual notice of the Zak claim, or by failing to inform J.B. Hunt that he would not be providing notice. In support of its claim against Mr. Murphy, J.B. Hunt attaches an affidavit to its Motion to Remand that states that on January 27, 2011, J.B. Hunt directed Mr. Murphy to place its insurance carriers on notice of the Zak claim. J.B. Hunt therefore believes that Mr. Murphy is a proper Defendant in this lawsuit because J.B. Hunt's rights under the AISLIC insurance contract cannot be finally decided without Mr. Murphy's presence in the lawsuit.

3

In the Notice of Removal (Doc. 1), the AIG Defendants point out that this Court would have original jurisdiction over the case, but for Mr. Murphy's presence in the lawsuit, which defeats diversity jurisdiction under 28 U.S.C. § 1332(a)(1). The AIG Defendants believe that Mr. Murphy was fraudulently joined for the purpose of defeating diversity, and that the Complaint alleges no colorable negligence claim against him for two reasons. First, the AIG Defendants maintain that the Complaint does not explain how Mr. Murphy was personally or directly involved in the events surrounding the alleged insurance-related injury that J.B. Hunt suffered, and that other evidence indicates that certain insurance agents other than Mr. Murphy actually procured the AISLIC policy for J.B. Hunt. Second, the AIG Defendants contend that the Complaint fails to plead a "special relationship" between Mr. Murphy and J.B. Hunt, and under Arkansas law, an insurance agent or broker has no duty to inform an insured about coverage or to advise an insured about reporting a claim unless the agent has a special relationship with the insured. Below, the Court will consider the appropriate legal standard to use when deciding the Motion to Remand, and then will consider the merits of each party's position on fraudulent joinder.

## II. LEGAL STANDARD

An action filed in state court may be removed only if the case could have originally been brought in federal court. Under the diversity-of-citizenship jurisdiction granted to federal courts, a civil action between citizens of different states involving over $75,000 in dispute may be brought in federal court. For a state court action to be removable based on diversity-of-citizenship jurisdiction: (1) defendants must file a notice of removal with the district court within the appropriate time limit; (2) the parties' citizenship must be completely diverse; and (3) there must be in excess of $75,000 in controversy. 28 U.S.C. §§ 1332 and

4

1446. One exception to the diversity requirement is the rule regarding fraudulent joinder. The purpose of this exception is to prevent a plaintiff from thwarting a defendant's ability to remove an action by fraudulently joining a non-diverse defendant "who has 'no real connection with the controversy.'" *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)).

To prove fraudulent joinder, a defendant must show that the plaintiff's claim against the diversity-destroying defendant has no reasonable basis in fact and law. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010); *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002); *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983). The parties may cite to affidavits and other evidence outside the pleadings in establishing, or disputing, a claim of fraudulent joinder, in order "to determine if there is any factual support for the claims against the allegedly fraudulently joined defendant." *Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011). Ultimately, a removing defendant bears the burden of establishing by a preponderance of the evidence that jurisdiction in federal court is proper; and if any lingering doubt remains, jurisdiction should be resolved in favor of remand. *In re Prempro*, 591 F.3d at 620.

Establishing fraudulent joinder requires that a defendant "do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion." *Knudson*, 634 F.3d at 980. The standard is more demanding than that, as it "do[es] not focus on the artfulness of the plaintiff's pleadings," *id.*, but instead asks whether "state law *might* impose liability on the resident defendant under the facts alleged," *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) (emphasis in original).

## III. DISCUSSION

The AIG Defendants' first argument in favor of finding fraudulent joinder is that the Complaint does not adequately explain how Mr. Murphy was personally or directly involved in the events that surround the declaratory judgment action for insurance coverage. The Court has reviewed the Complaint and finds that it adequately explains Mr. Murphy's role in the larger insurance-coverage dispute. Specifically, the Complaint alleges: (1) that J.B. Hunt and Mr. Murphy worked extensively with AIG to manage the risk of J.B. Hunt's transportation operations; (2) that J.B. Hunt suffered damages as a result of AIG/AISLIC's refusal to indemnify J.B. Hunt for the Zak judgment and to pay policy limits; (3) that AIG/AISLIC's reason for refusing to pay on the AISLIC policy was that timely notice of the Zak claim was not provided; (4) that J.B. Hunt believed that notice of the Zak claim had been timely made as to all its insurers and policies, including the AISLIC policy; (5) that AIG had a duty to forward notice of the Zak claim to its affiliate, AISLIC; (6) that if AIG was not under a duty to forward such notice, then Mr. Murphy owed a duty to J.B. Hunt to provide notice to AISLIC or otherwise advise J.B. Hunt that he would not provide notice; and (7) that Mr. Murphy actually provided notice to the wrong tower of insurance regarding the Zak claim. See Doc. 3.

Next, the AIG Defendants point to evidence that they have uncovered and attached to their Notice of Removal, see Docs. 1-2 and 1-3, which, in their estimation, tends to show that insurance agents other than Mr. Murphy were involved in procuring the AISLIC policy

for J.B. Hunt. The Court has reviewed this evidence and finds that it does not absolve Mr. Murphy of potential liability here. At best, it shows other agents in addition to Mr. Murphy might also have had some involvement in servicing J.B. Hunt's insurance policies. As Mr. Murphy is the Vice President of Risk Managment for Rebsamen Insurance, it follows that he might have directed other agents to assist him with the J.B. Hunt account. As the Complaint alleges, it is possible that Mr. Murphy was ultimately responsible for servicing J.B. Hunt's policies, and assumed a duty to provide notice to insurers of pending claims, or performed other services for J.B. Hunt as per a written or oral contract.

With regard to Mr. Murphy's business relationship with J.B. Hunt, the Court has reviewed the affidavit of J.B. Hunt's Senior Vice President of Risk Management, Mark Whitehead. (Doc. 10-1). Mr. Whitehead affirms that "Mr. Murphy acted as J.B. Hunt's insurance broker for ten-plus years"; "had direct, personal authority or involvement related to the effectuation of J.B. Hunt's insurance coverage"; "had the responsibility to advise J.B. Hunt regarding any notices of claims that were required to be made to J.B. Hunt's respective insurers and to facilitate, assist with or direct the delivery of any required notice"; and was specifically directed by J.B. Hunt on January 27, 2011, "to place its insurance carriers on notice of a claim related to Kristen Zak" and "may have failed to do so" by providing "notice to the wrong tower of insurance or may have notified the wrong insurers himself." *Id.* This affidavit has the effect of adding context to the general allegations made in the Complaint. In the Court's view, the affidavit and Complaint, taken together, tend to establish a colorable claim for negligence against Mr. Murphy that is not "frivolous or otherwise illegitimate." *Filla*, 336 F.3d at 809.

The Court now turns to the AIG Defendants' second argument, which is that Arkansas law will only allow a negligence claim against an insurance broker to stand if the policy-holder can establish that a "special relationship" existed with the broker. According to the AIG Defendants, no special relationship between J.B. Hunt and Mr. Murphy has been set forth in the Complaint. Although it is true that under Arkansas law, "an insurance agent has no duty to advise or inform an insured as to insurance coverages" and the insured must instead "educate himself concerning matters of insurance," liability for professional negligence may be shown if there exists "a special relationship between the agent and the insured, as evidenced by an established and ongoing relationship over a period of time, with the agent being actively involved in the client's business affairs and regularly giving advice and assistance in maintaining proper coverage for the client." *Buelow v. Madlock*, 90 Ark. App. 466, 471 (2005).

The claim J.B. Hunt asserts against Mr. Murphy is not about whether he breached a duty to inform J.B. Hunt about the existence of coverage. It is not about whether he recommended a policy of insurance that did not adequately suit J.B. Hunt's needs. The claim against Mr. Murphy is about whether he owed a duty to J.B. Hunt to provide notice of a pending lawsuit and claim for liability to J.B. Hunt's insurer or insurers, consistent with any longstanding obligations Mr. Murphy might have had with J.B. Hunt under contract or due to a pattern or practice established in the course of their business relationship, or consistent with a specific duty that Mr. Murphy agreed to undertake with respect to J.B. Hunt's account generally or to the Zak claim specifically.

The Court has not located any authority in Arkansas that would lead it to conclude that this type of negligence claim must be predicated on the existence of a "special

relationship" between the parties. Even if such a relationship were required under law, however, the Court finds that the Complaint adequately alleges that such a relationship existed. If the state court were to disagree and determine that more specific facts were required to be pleaded, then the statements Mr. Whitehead made in his affidavit could easily be added to the Complaint to provide more detail.

Finally, the Court considers, *sua sponte*, whether the claim against Mr. Murphy was untimely filed, and is subject to summary dismissal due to the expiration of the three-year statute of limitations on negligence claims in Arkansas. Mr. Murphy filed an Answer (Doc. 15) on March 15, 2017, in which he asserted that the sole claim pending against him was subject to dismissal due to the expiration of the statute of limitations. Although Mr. Murphy's Answer does not provide many details, the Court has gleaned from Mr. Whitehead's affidavit that J.B. Hunt directed Mr. Murphy to provide notice of the Zak claim to insurance carriers on January 17, 2011. Presuming that the clock began to run on the negligence claim on that date, the statute of limitations would have ordinarily expired three years later, on January 17, 2014. As the instant lawsuit was filed in October of 2016, it is possible to read the Complaint as stating a claim against Mr. Murphy that is time-barred.

The standard applied in the Eight Circuit for fraudulent joinder is whether "no reasonable basis in fact and law supporting a claim against the resident defendant." *Wiles*, 280 F.3d at 871. Under this standard, it would follow that *if* the facts in the Complaint clearly demonstrated that the sole claim against Mr. Murphy were time-barred, then it would be subject to summary dismissal. The Court cannot find that the Complaint contains facts that are so clear and unequivocal that there is no possibility of J.B. Hunt arguing an exception to the statute of limitations defense. J.B. Hunt maintains that it instructed Mr.

9

Murphy to provide notice to AIG/AISLIC of the Zak claim, and did not know that he failed to do so until after J.B. Hunt received the reservation-of-rights/denial-of-claim letter from AIG on June 30, 2015. The facts are not clear regarding when the cause of action against Mr. Murphy accrued, or, if the cause of action accrued more than three years before the Complaint was filed, whether Mr. Murphy committed some positive act of fraud that was executed in a way that prevented J.B. Hunt from discovering it, even with the exercise of reasonable diligence. *See Williams v. Hartje*, 827 F.2d 1203, 1205-06 (8th Cir. 1987) (noting that under Arkansas law, "concealment of facts, no matter how fraudulent or otherwise wrongful, has no effect on the running of a statute of limitations if the plaintiffs could have discovered the fraud or sufficient other facts on which to bring their lawsuit, through a reasonable effort on their part"). Due to the unresolved questions of fact surrounding the statute of limitations defense, the negligence claim still retains a reasonable basis in fact and law, and the state court should be afforded the opportunity to investigate the defense and determine whether it holds, or whether the statute should be tolled.

## IV. CONCLUSION

For the reasons explained herein, **IT IS ORDERED** that Plaintiff J.B. Hunt Transport, Inc.'s Motion to Remand (Doc. 9) is **GRANTED**. As the Court has found that Defendant Liam Murphy was not fraudulently joined, the Court lacks subject matter jurisdiction over the case pursuant to 28 U.S.C.§ 1447(c), and instructs the Clerk of Court to immediately **REMAND** the matter to the Circuit Court of Benton County, Arkansas for further disposition.

**IT IS FURTHER ORDERED** that Plaintiff's request for reimbursement of its costs, expenses, and fees associated with removal is **DENIED**.

**IT IS SO ORDERED** on this 17th day of April, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE